## SUPREME COURT·

JOHN J. MONELL, administrator, &c., agt. ASHBEL DEN-
NISON and others.

Where the *jurisdiction* of a subordinate tribunal (surrogate) having cognizance of
the general subject, has attached, by the presentation of a verified *prima facie*
case and by the appearance of the parties, its decision, even on a quasi juris-
dictional fact, such as that of *inhabitancy*, must be conclusive, unless reversed
on appeal.

The question of residence is often difficult to decide where the facts are clear, and
much more so, where the facts are obscured by lapse of time and loss of docu-
ments and witnesses.

An interesting case, arising on proceedings to foreclose a mortgage, which had
apparently been discharged of record over seventeen years, on the ground that
the bond and mortgage were claimed under a will to be owned, and the
moneys received by an *executor* who had forged the will and made himself
sole executor and trustee, and procured the proof thereof before a surro-
gate who had no jurisdiction in consequence of the non-residence of the
testator.

*New - York Special Term, February,* 1859.

APPLICATION to set aside proceedings of foreclosure, and
for a dismissal of the complaint.

R. A. BROWN, *for motion.*
E. L. FANCHER, *opposed.*

ROOSEVELT, Justice. This is a proceeding—unprecedented,
it is believed, in our judicial records—to foreclose a mortgage
not in the plaintiff's possession, and once already paid and
satisfied and delivered up and cancelled, and so entered more
than seventeen years ago in the books of the register's office.

Ashbel Dennison, it appears, who is one of the defendants in
this suit, on the 29th December, 1836, executed to the late
Theodore B. Tallmadge a mortgage for $6,000, on a lot in
West street near Murray street, in the city of New-York.

Tallmadge, who was a young man, a grandson of George

Monell agt. Dennison.

Clinton, died about four years afterwards, on the 17th of January, 1841, at Hudson, in Columbia Co., leaving this mortgage among the assets of his estate, and leaving a young widow under age and two infant children. Immediately on his death, a paper, dated April, 1839, was produced by Mr. Philip Burrowes, purporting to be the will of the deceased, making him, Burrowes, a legatee to a large amount and sole executor and trustee of the estate, and testamentary guardian of the children. An application was also made by Burrowes, to the surrogate, not of Columbia county, but of New-York, for letters testamentary, on the alleged ground, verified by his oath, that the deceased at the time of his death was an inhabitant of New-York, that fact being necessary by law to confer jurisdiction upon the surrogate of New-York. This application was successful; but how the question of jurisdiction was disposed of does not clearly appear. The only evidence of the deceased's alleged residence in New-York would seem to have been Burrowes' own affidavit accompanying his petition. The letters testamentary were issued on the 28th of May, 1841. Burrowes collected the interest on the bond, and on the 20th of December, in the same year, the mortgagor paid him $1,423.43, on account of the principal—all of which was indorsed on the bond; leaving a balance of $4,576.57. The next day, in consideration of that sum, he assigned the securities to Hiram Walworth, clerk of the court of chancery, who, on the 26th September, 1844, in pursuance of an order of that court, assigned them to David F. Randolph. Both these assignments were accompanied by an actual delivery of the bond and mortgage and were also duly recorded. On the 19th of November, 1844, Dennison paid the balance, both principal and interest, in full, to Randolph, and received from him the securities and a regular satisfaction piece, which was filed and entered the same day. From that time, a period of more than fourteen years, the premises remained, to all appearances, free and clear of all incumbrances, so far as respects the mortgage in question; and two loans, amounting together to $46,000, have been obtained on the faith of the register's certificate to that

effect. Burrowes remained in this country till 1854 or 1855, a period of more than twelve years, and no steps were taken to disturb his acts or to call his authority in question. It is now contended that the will was a fraudulent document; and that, whether valid or not, the surrogate of New-York had no jurisdiction; that the letters testamentary issued by him were a nullity; and that Burrowes' assignment as a consequence and the satisfaction piece which followed it were mere blank paper; leaving the mortgage, with all the arrears of interest, amounting together to over $12,000, to stand in full force as a first incumbrance on the premises.

The law declares (2 *R. S.* 221, § 69) that the surrogate of each county shall have " exclusive jurisdiction " to take the proof of the wills of deceased persons, who, at or immediately previous to their deaths, were " inhabitants of the county of such surrogate in whatever place such death may have happened;" and that the surrogate who takes the proof of the will " shall issue letters testamentary thereon." That Mr. Tallmadge *died* in Columbia county is, therefore, a point of no consequence. The question is, was he at the time or immediately previous, an *inhabitant* of that county.

His original domicil was at Hempstead, on Long Island. He there had a farm or country seat, which, on going to Europe, he let to a tenant, declaring, it is said, at the same time his purpose not to return to it. He remained in France a year or eighteen months with his family. When he came back, the fair inference, I think, from the testimony is, that he continued, after leaving the ship, for a few weeks in New-York, looking after his real estate and his other property; of which, his sister says, Burrowes had the charge during his absence. Mr. Genet, his cousin, testifies that he came to his house in Greenbush, " a week or two " after his arrival from France. At Genet's he remained only " a few days." He then took board at a public-house in Schodack, where his youngest child was born and where he " resided," as Genet calls it, " some four months," and then removed to another public-house in

Monell agt. Dennison.

Hudson and there "resided" again another four months until he died.

The question on this evidence is not, was Tallmadge actually an inhabitant of Columbia county, but was the surrogate of New-York necessarily wrong in deciding, on the evidence before him, that the deceased was an inhabitant of New-York? After the lapse of so many years, and the death of at least three most important witnesses, and the absence of another equally important, to sustain the jurisdiction, the testimony now given, as it seems to me, even if admissible, is too slight and equivocal to overthrow the presumption which the law inculcates in favor of judicial acts. When the probate took place, Mrs. Tallmadge, the widow, since deceased, was living and of full age, and, as we may infer from the citation, present in court; Mr. Taylor, the brother-in-law, also since deceased, was living and participated in the proceeding; Mr. Burrowes, now absent from the country, the executor, who propounded the instrument and swore to the residence in New-York, was on the spot ready to be cross-examined, and, if possible, confuted; and the two infant children were duly represented by a guardian appointed by the surrogate to watch over their interests. Mrs. Tallmadge too, although she considered the will, as well she might, to be a most unjust disposition of her husband's estate, took no steps during the many subsequent years of her life to call the probate in question, either by appeal or in any other mode; and for aught that appears— and the inference after the lapse of so many years is a legitimate one—accepted from and through Burrowes, as the duly appointed executor, the provision made for her by the instrument which he called, truly or not, her husband's will.

All these circumstances, and more might be specified, although in the view now taken not technically conclusive, are sufficient to counterbalance the loose evidence to which I have referred, given after the lapse of eighteen years from the date of the transaction. It might well have been that the deceased, "immediately previous to his death," had a temporary lodging place in the city of New-York as well as in the

city of Hudson, without being permanently settled in either, or anywhere else—an inference which is strengthened by the fact that immediately after his death his family are found living in New-York.

As matter of fact, therefore, the court, I think, under the circumstances, is justified, if necessary, in finding that the deceased, within the meaning of the statute, was an inhabitant of the city of New-York, sufficiently so at least to give the surrogate jurisdiction.

I should say, however, that I am not prepared to admit that such a finding is necessary to sustain the defence. Where the jurisdiction of a subordinate tribunal having cognizance of the general subject has attached by the presentation of a verified *prima facie* case, and by the appearance of the parties, its decision, even on a *quasi* jurisdictional fact, such as that of inhabitancy, must be conclusive, unless reversed on appeal. To allow it to be called in question collaterally, and on every occasion and during all time, would be destructive of all confidence. No business, in particular depending on letters testamentary or of administration, could be safely transacted. Payments made to an executor or administrator, even after judgment, would be no protection. Even if the debtor litigated the precise point, and compelled the executor to establish it by proof, the adjudication would avail him nothing, should a subsequent administrator, as in this case, spring up, and after the lapse of the fifth of a century demand payment a second time, when a scintilla of evidence on one side remained and all on the other had perished. A large number of titles, too, depend for their validity on decrees of foreclosure, and these decrees are often made in suits instituted by executors or administrators or their assigns. Must these, too, be subject to be overhauled at any period, however remote, on the nice question of residence? A question often difficult to decide where the facts are clear, and much more so of course where the facts are obscured by lapse of time and loss of documents and witnesses.

The doctrine contended for by the plaintiff, and indispens-

able to his success is, I think, altogether too dangerous for judicial sanction.

The complaint, therefore, on that ground as well as on the mere issue of fact, should be dismissed.